MICHELLE L. ROBERTS (SBN: 239092)
Email: michelle@ssrlawgroup.com
CASSIE SPRINGER AYENI (SBN: 221506)
Email: cassie@ssrlawgroup.com
**SPRINGER & ROBERTS LLP**
1050 Marina Village Pkwy., Suite 105
Alameda, CA  94501
Telephone:     (510) 992-6130
Facsimile:      (510) 280-7564

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| BENITO INFANTINO,<br><br>                    Plaintiff,<br>     vs.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>                    Defendant, | Case No.  5:15-cv-01901<br><br>**COMPLAINT (ERISA)** |

**JURISDICTION**

1.      Plaintiff Benito Infantino ("Plaintiff") brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

**VENUE**

2.      Plaintiff currently resides in Santa Clara County in California.

3.      On information and belief, Defendant Life Insurance Company of North America ("LINA") is a licensed insurance company domiciled in the Commonwealth of Pennsylvania and

COMPLAINT
CASE NO. 5:15-cv-01901

State of Connecticut. LINA is a wholly owned subsidiary of CIGNA Holdings, Inc. a Delaware holding company. LINA offers only group long-term disability ("LTD") policies in various states, including California.

4. Venue lies in the Northern District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Plaintiff resides in this District, the breaches alleged occurred in this District, and the ERISA-governed plan at issue was administered in part in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## INTRADISTRICT ASSIGNMENT

5. This action arises in Santa Clara County since Plaintiff resides in, Defendant may be found in, and the employee benefit plan at issue is administered in part in, and some of the breaches alleged occurred in Santa Clara County.

## PARTIES

6. LINA is the insurer of benefits provided under a group long-term disability ("LTD") plan sponsored by Zynga, Inc. (hereinafter referred to as "the LTD Plan"). LINA is also the claims administrator for the LTD Plan and makes decisions regarding eligibility for benefits under the terms of the LTD Plan.

7. At all relevant times, Plaintiff was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the LTD Plan.

8. At all relevant times, the LTD Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1). At all relevant times, the LTD Plan offered, *inter alia*, LTD benefits to participants, including Plaintiff. The LTD benefits are funded by LINA through a group insurance contract, Policy No.: FLK 960585, held by the Trustee of the Group Insurance Trust for Employers in the Services Industry, to which Zynga Inc. is subscribed. FLK 960585 also provides "buy-up" LTD insurance, which provides income protection at 60% of a participant's annual earnings to Social Security Retirement Age.

## FACTS

9. On January 18, 2011, Plaintiff started working at Zynga Inc. as a principal

COMPLAINT
CASE NO. 5:15-cv-01901

engineer in a pre-IPO group of just 7 people.  Over the next few years, Zynga Inc. grew substantially and Plaintiff's group grew to 40 people and he moved into the role of engineering manager, eventually overseeing up to 10 engineers.  In this role, Plaintiff worked long hours, with his average day starting at around 9 a.m. and lasting twelve hours, plus some work at home.  Plaintiff was available 24 hours a day, 7 days a week to address issues in all of Zynga's international offices.

10. In September 2013, Plaintiff started having extreme pain in his forearms, especially his left forearm.  Following a visit to his doctor and a cortisone injection in his left elbow, Plaintiff's pain subsided, only to return about one month later.

11. By the end of November 2013, Plaintiff was in pain almost every day.  Dr. Richard B. Ward, Plaintiff's internal medicine physician, diagnosed Plaintiff with lateral epicondylitis, also known as Tennis Elbow.  Dr. Ward recommended that Plaintiff work from home 2-3 days a week in order to rest his elbow.  Working from home part-time did not significantly help the pain symptoms and Plaintiff began having problems at work due to the limitations caused by his pain.

12. By the end of February 2014, Plaintiff saw Dr. Ward and reported that his pain was "excruciating" at times and "significantly impacting his ability to work."  Dr. Ward put Plaintiff on disability starting March 7, 2014 for a minimum of 3 months.  However, by May 2014, simple activities such as typing caused Plaintiff significant pain and he could not return to work.

13. Soon thereafter, Plaintiff started having pain in his neck and behind his right shoulder blade.  He also started feeling pain and numbness in his right arm.  Dr. Ward observed tenderness and muscle spasm in the right suprascapular area and a decreased range of motion of the cervical spine.  Dr. Ward referred Plaintiff to Dr. Hoyland Hong, a physiatrist.

14. Dr. Hong immediately ordered a diagnostic MRI and prescribed Plaintiff Medrol Dosepak and Norco.  Based on the results of the MRI, Dr. Hong diagnosed Plaintiff with degenerative disc disease, moderate spinal stenosis, and neural foraminal narrowing in 5 places.  Plaintiff underwent physical therapy for a few months but it did not help his pain symptoms.

15. Plaintiff applied for LTD benefits under the Plan, which contains the following standard for disability.

> Definition of Disability/Disabled
> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
> 1. unable to perform the material duties of his or her Regular Occupation; and
> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
> 2. unable to earn 80% or more of his or her Indexed Earnings.

16. By letter dated July 14, 2014, LINA denied Plaintiff's claim for LTD benefit ("Claim Denial Letter"). LINA's position on Plaintiff's claim was that there were no abnormal exam findings or diagnostic test results to demonstrate a functional impairment, weakness, atrophy or neuropathic involvement, and that there were no measurable exam findings or evidence of conservative treatment and no surgical condition has been identified.

17. By letter dated December 5, 2014, LINA granted Plaintiff an additional 45 days to submit his appeal, or until February 24, 2015.

18. By letter dated February 6, 2015, Plaintiff submitted a timely written appeal of LINA's determination. Included with the appeal, among other things, were objective magnetic resonance imaging (MRI) scan results confirming Plaintiff's diagnosis of cervical disc herniation and cervical degenerative disc disease and declarations from Plaintiff, his treating doctors, and his former co-workers, all of whom attested to Plaintiff's disability. Plaintiff also provided visual evidence of the atrophy in his right arm.

19. By letter dated March 19, 2015, LINA upheld the denial of Plaintiff's LTD claim. LINA based its decision on the review of an allegedly independent medical doctor, who opined that Plaintiff is not functionally limited. LINA explained that physical deficits noted at Plaintiff's August 29, 2014 appointment were "not quantified and the evaluation is not consistent with Mr. Infantino's initial physical evaluation." LINA contends that Plaintiff "has nonspecific upper

COMPLAINT
CASE NO. 5:15-cv-01901

extremity pain syndrome without consistent physical exam findings." But, in the Claim Denial Letter, LINA based its denial, in part on, the allegation that Plaintiff's May 14, 2014 physical exam was "unchanged" from prior office visits. In other words, LINA justified its initial denial on the fact that Plaintiff's physical exam was the same but justified its appeal denial on the fact that Plaintiff's physical exam findings changed. As Plaintiff's condition worsened, his physical exam findings are expected to change, such that the basis for LINA's denial is nonsensical. Further, LINA did not substantively address all of the evidence which Plaintiff submitted in support of his claim, including the objective MRI results.

20. In *Rao v. Life Ins. Co. of N. Am.*, No. 5:12-CV-1459, 2015 WL 1849866 (N.D.N.Y. Apr. 23, 2015), LINA was found to have abused its discretion by relying on a medical review which discounted the opinions of the claimant's doctors on the basis of perceived deficiencies in their medical records rather than on the basis of any genuine medical determination and discounted the plaintiff's MRI studies for their failures to "quantify" the degree of resulting impairment.

21. On information and belief, LINA has a systemic policy or practice of denying LTD claims in reliance on reviews that do not make any genuine medical determination, but rather impose methods of testing that do not exist in the disability policy. LINA contends that Plaintiff does not have "consistent physical exam findings," but cites to no provision in the Plan which requires any particular exam finding, nor does LINA cite to any provision which sets forth any quantification requirement. LINA denied Plaintiff's claim because there were no abnormal exam findings or diagnostic test results to demonstrate a functional impairment, weakness, atrophy or neuropathic involvement. However, Plaintiff submitted the exact evidence which LINA claimed was missing but LINA continued to deny his benefits due to claims of inconsistent physical examinations and lack of quantification.

22. If and when Plaintiff's LTD claim is instated with LINA, LINA will request periodically from Plaintiff evidence to support his claim for LTD benefits. As such, injunctive relief prohibiting LINA from denying claims based on reviews that do not provide a genuine medical determination or require evidence not called for by the Plan is necessary.

23. Plaintiff has exhausted any requirement under the Plan and/or ERISA to exhaust his administrative remedies.

24. Plaintiff's claim for LTD benefits under the Plan will be reviewed *de novo* because no Plan document grants LINA discretionary authority. Any grant of discretionary authority is contained only in the Summary Plan Description ("SPD"), which is not the written instrument of the Plan. A discretionary clause found only in the SPD is not sufficient to alter the standard of review from *de novo*. *Prichard v. Metro. Life Ins. Co.*, No. 12-17355, __F.3d___, 2015 WL 1783507 (9th Cir. Apr. 21, 2015).

25. Even if a Plan document grants LINA discretionary authority to make claims decisions, it is rendered invalid by California Insurance Code Section 10110.6.

26. At all relevant times, Plaintiff has been disabled under the terms of the Plan and entitled to payment of LTD benefits.

## COUNT I
### [Claim for Benefits Pursuant to ERISA § 502(a)(1)(B)]

27. Plaintiff incorporates Paragraphs 1 through 26 as though fully set forth herein.

28. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

29. At all relevant times, Plaintiff has been entitled to LTD benefits under the Plan. By denying Plaintiff's claim for LTD benefits under the Plan, and by related acts and omissions, Defendant has violated, and continues to violate, the terms of the Plan and Plaintiff's rights thereunder.

## COUNT II
### [Violation of ERISA § 503, 29 U.S.C. § 1133 & the Terms of the Plan]

30. Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

31. ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3), authorizes a plan participant to bring a

civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

32. ERISA § 503 requires every employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," and must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."

33. DOL Regulations in 29 C.F.R. § 2560.503-1(g)(1) require, among other things, the notification of an initial adverse benefit determination to "set forth, in a manner calculated to be understood by the claimant— (i) The specific reasons or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based; and (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary. . . ."

34. The Claim Denial Letter did not notify Plaintiff of any internal rule, guideline, protocol or other similar criterion relied upon in making the adverse decision.

35. The Claim Denial Letter stated that "[t]here are no abnormal exam findings or diagnostic test results to demonstrate a functional impairment, weakness, atrophy or neuropathic involvement. There were no measurable exam findings or evidence of conservative treatment and no surgical condition has been identified." The Claim Denial Letter did not explain why such material or information was necessary nor did it describe with sufficient particularity and understandability, the evidence that LINA believed was lacking. "Measurable exam findings" is vague and ambiguous. There is no explanation as to the import of weakness, atrophy or neuropathic involvement, and at what "quantity" these impairments must exist in order for LINA to find that Plaintiff is precluded from performing his Own Occupation.

36. To the best that the Claim Denial Letter could be deciphered, Plaintiff submitted evidence which the Claim Denial Letter stated was lacking but LINA continued to uphold the

COMPLAINT
CASE NO. 5:15-cv-01901

denial.

37. As a result of the above, the Claim Denial Letter did not comply with ERISA § 503 or 29 C.F.R. § 2560.503-1(g)(1) or the claim procedures as set forth in the Summary Plan Description.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A. Declare that Defendant violated the terms of the Plan by denying Plaintiff's claim for LTD benefits;

B. Order Defendant to pay LTD benefits to Plaintiff pursuant to the terms of the Plan from June 5, 2014 through the date judgment is entered herein; together with prejudgment interest on each and every such monthly payment through the date judgment is entered herein;

C. Declare Plaintiff's right to instatement into the Plan and his right to receive future LTD benefit payments under the terms of the LTD Plan for as long as he remains disabled under the Plan's terms;

D. Order Defendant to administer long-term disability benefit claims in a manner that complies with ERISA and the terms of the Plan; specifically, an order which prohibits LINA from making claims decisions that impose methods of testing that do not exist in the disability policy nor reasonably calculated to assist in the determination of disability under the Plan;

E. Order Defendant to comply with the DOL Regulations in 29 C.F.R. § 2560.503-1(g)(1);

F. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

G. Provide such other relief as the Court deems equitable and just.

Dated: April 29, 2015                    Respectfully submitted,

                                         SPRINGER & ROBERTS LLP
                                         /s/ *Michelle L. Roberts*
                                         Michelle L. Roberts

COMPLAINT
CASE NO. 5:15-cv-01901